```
               IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS


JASON S. TYLER,

                    Plaintiff,

vs.                                    Case No. 11-2241-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 26, 2010, administrative law judge (ALJ) Deborah J. Van Vleck issued her decision (R. at 10-19). Plaintiff alleges that he has been disabled since December 7, 2007 (R. at 10). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since December 7, 2007, his application date (R. at 12). At step two, the ALJ found that plaintiff had the following severe impairment: borderline intellectual functioning (R. at 12). At step three, the ALJ

determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12-13).  After determining plaintiff's RFC (R. at 14), the ALJ determined at step four that plaintiff has no past relevant work (R. at 17).  At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**III.  Did the ALJ err by finding that plaintiff's impairments do not meet listed impairment 12.05C or 12.05D?**

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment.  Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "*all*" of the criteria of the listed impairment.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

Plaintiff argues that his impairments meet or equal listed impairment 12.05C and/or 12.05D.  Listed impairment 12.05C and 12.05D are as follows:

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in

> adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied....
>
>         \*     \*     \*
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Pt. 404, Subpt. P., App. 1 (2011 at 511).

    The ALJ found that plaintiff did not meet listed impairment 12.05C because, even though the plaintiff had a valid IQ of 60-70, plaintiff lacked a physical or other mental impairment imposing an additional and significant work-related limitation of function (R. at 13).  The ALJ further found that listed impairment 12.05D was not met because plaintiff only had mild restrictions in activities of daily living, no difficulties with

social functioning, moderate difficulties with concentration, persistence or pace, and no episodes of decompensation (R. at 13).

In a speech-language evaluation on June 25, 2004, Amy Dejmal, a speech-language pathologist, made the following conclusions:

> Based on these evaluation results and observations, Jason appears to present severely reduced receptive and expressive language skills as compared to his same age peers. Jason's performance on intelligence testing is unknown to this examiner. His speech skills are within normal limits, although volume is sometimes reduced for conversation. Jason's reduced communication skills are likely to affect his social and academic development.

(R. at 295). Furthermore, Dr. Stern, who performed a disability determination cognitive assessment on March 24, 2008, noted that plaintiff had difficulty with basic verbal expression, was unable to define words, and had a significant lack of knowledge and comprehension skills. Dr. Stern also noted that plaintiff mumbled a lot, and Dr. Stern had to ask plaintiff to repeat words frequently. He also noted that plaintiff fell asleep rapidly during the IQ testing, and began to snore. Thus, Dr. Stern found the validity of the IQ testing to be questionable (R. at 270). Plaintiff argues that the diagnosis of severely reduced receptive and expressive language skills is an additional and significant work-related limitation of function under 12.05C.

Listed impairment 12.05C requires that a claimant have a physical or other mental impairment imposing an additional and significant work-related limitation of function.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  In Hinkle, the court held that this requirement is met if the claimant suffers from a severe physical or other mental impairment as defined at step two of the disability analysis, apart from the decreased intellectual functioning.  132 F.3d at 1352.  Therefore, the court will set forth the standard to show that a claimant has a severe impairment at step two.

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[1]  Williams,

---

[1] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in

844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

 The ALJ provided the following discussion of Ms. Dejmal's assessment:

> While Ms. Dejmal's evaluation results and observations indicated that the claimant presented with reduced receptive and expressive language skills as compared to his same age peers, she noted that his speech skills were within normal limits despite his reduced volume at times for conversation. Although Ms. Dejmal opined that the claimant's reduced communication skills were likely to affect his social and academic development, in contrast Ms. Dejmal indicated

---

a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004).

> that receptively the claimant followed simple one- and two- step directions with low memory load which is consistent with the residual functional capacity found here.

(R. at 16). The court has reviewed the report of Ms. Dejmal, and finds the ALJ summary of her report to be consistent with the substance of her report. Ms. Dejmal did report that plaintiff was able to follow simple one-and two- step directions when the memory load was low (R. at 295).

At step two, plaintiff must show that the impairment in question would interfere with or have a serious impact on plaintiff's ability to do basic work activities. Despite the fact that plaintiff has the burden of proof, plaintiff does not point to any statement by Ms. Dejmal, Dr. Stern, or any other medical or other source indicating that plaintiff's severely reduced receptive and expressive language skills would interfere with or have a serious impact on plaintiff's ability to perform basic work activities. The ALJ did not find that plaintiff's severely reduced receptive and expressive language skills constituted a severe impairment. As noted above, the ALJ carefully reviewed and summarized the reports by Ms. Dejmal, Dr. Stern, and other medical sources. Although the ALJ noted that Ms. Dejmal found severely reduced receptive and expressive language skills as compared to his same age peers, the ALJ also noted that Ms. Dejmal found that plaintiff was able to follow simple one-or two-step directions when the memory load was low,

and that his speech skills were within normal limits.  Ms. Dejmal also indicated that plaintiff was able to ask grammatically correct and meaningful sentences, but had difficulty using word meanings associated with higher level vocabulary (R. at 295).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Even though plaintiff has the burden of proof, plaintiff failed to point to any evidence, including evidence from a medical or other source, indicating that the impairment of severely reduced receptive and expressive language skills would interfere with or have a serious impact on plaintiff's ability to perform basic work activities.  The court finds that substantial evidence supports the finding of the ALJ that plaintiff's impairment does not meet or equal listed impairment 12.05C because plaintiff lacks a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Plaintiff next argues that his impairment meets or equals listed impairment 12.05D.  Specifically, plaintiff argues that he has a marked restriction in activities of daily living, and marked difficulties in concentration, persistence or pace (Doc. 14 at 11-13).  By contrast, the ALJ found that plaintiff only had mild restrictions in activities of daily living, and moderate

difficulties in concentration, persistence or pace (R. at 13). In his decision, the ALJ stated that he gave great weight to the opinion of Dr. Blum and Dr. Warrender (R. at 17). Dr. Blum performed a state agency mental assessment, and Dr. Warrender reviewed that assessment and affirmed its findings (R. at 274-286, 301). Dr. Blum opined that plaintiff had mild restriction in activities of daily living, and moderate difficulties in maintaining concentration, persistence or pace (R. at 284). Thus, evidence from an acceptable medical source supports the findings of the ALJ. By contrast, despite the fact that plaintiff has the burden of proof, there is no medical or other source evidence in the record indicating that plaintiff has marked limitations in these two categories.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The court finds that substantial evidence supports the finding of the ALJ that plaintiff's impairment does not meet or equal listed impairment 12.05D because plaintiff has only mild restrictions in activities of daily living, and moderate limitations in concentration, persistence or pace.[2]

---

[2] Plaintiff did not dispute the findings of the ALJ that plaintiff had no difficulties with social functioning and no episodes of decompensation.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 5th day of June, 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge